[646 NYS2d 315]

Gail L. Haymes, Appellant, v Stephen D. Haymes, Respondent.

First Department, July 2, 1996

## APPEARANCES OF COUNSEL

*Brian J. Gallagher* of counsel, New York City *(Kronish, Lieb, Weiner & Hellman, L. L. P.,* attorneys), for appellant.

*Robert Stephan Cohen* of counsel, New York City *(Ellen Friedman Bender* on the brief; *Morrison Cohen Singer & Weinstein, L. L. P.,* attorneys), for respondent.

## OPINION OF THE COURT

MAZZARELLI, J.

In this action for divorce, plaintiff Gail Lowe Haymes' complaint originally alleged four causes of action, the second and third of which were, respectively, for actual and constructive abandonment. The factual allegations in the plaintiff's complaint indisputably stated a prima facie cause of action of abandonment and constructive abandonment. Plaintiff alleged that defendant Stephen Denis Haymes had left the marital home to live apart from her and abstained from engaging in sexual relations with her for a period of one or more years. However, just prior to opening statements, the trial court granted an oral motion by defendant for partial summary judgment dismissing these two causes of action. It held that the parties' failed six-week attempt at reconciliation, which occurred after the maturation of plaintiff's claims, and after this lawsuit for divorce had been commenced, barred plaintiff from succeeding on her abandonment claims as a matter of law. We now reverse the order dismissing the abandonment causes of action, reinstate the second and third causes of action, and remand for a trial on same.[1]

Gail and Stephen Haymes were married in 1965 and lived together, without interruption, until 1987. They are the parents of two adult children, born in 1967 and 1975. According to plaintiff's allegations, beginning in December 1984, de-

---

1. The first cause of action, which alleged that defendant committed adultery, and the fourth cause of action, which alleged cruel and inhuman treatment, have already been tried separately, and resulted in entry of judgment in defendant's favor.

fendant refused to have sexual relations with her, rejecting her repeated overtures. In September 1987, defendant moved out of the couple's home, an act which plaintiff maintains was without her consent and without justification. The plaintiff claimed that defendant engaged in several adulterous relationships with women identified in the complaint. Defendant retained legal counsel, who wrote to plaintiff, suggesting that she retain her own matrimonial lawyer. This action for divorce and related relief was commenced in September of 1988, after defendant had remained out of the marital abode for more than one year.

The couple attempted a reconciliation between November 18, 1988 and January 4, 1989, during which time they resumed residing unhappily together. According to Ms. Haymes, her husband expressed neither remorse for his adultery nor any affection for her during this six-week period. Unable to resolve their problems, Gail and Stephen Haymes returned to living apart and pursuing their respective marital claims. Indeed, in January 1989, defendant asserted his own counterclaim for divorce.

On January 23, 1995, on the eve of the trial herein, defendant moved in open court for dismissal of the second and third causes of action based upon abandonment. He urged that these claims were precluded because of the wife's admission, during a wholly separate conversion action, that she and the husband resumed living together briefly between November 18, 1988 and January 4, 1989. The wife also conceded that during this time period, while on a family vacation in Vail, Colorado, she and her husband had engaged in sexual relations at least once. According to defendant, upon returning from the family vacation, plaintiff informed him that the attempted reconciliation was a failure and that he was not to come back to the marital home. Defendant further contended that plaintiff had conceded both that she had sexual intercourse with defendant while the pair were in Vail and that the parties had later visited Acapulco, Mexico, together in 1990. Plaintiff, in response, argued that a single unsuccessful effort at reconciliation after the matrimonial action had already been commenced is hardly sufficient to defeat, as a matter of law, her claims founded in abandonment. Further, plaintiff did not concede the extent, nature and frequency of her sexual relations with defendant during this reconciliation.

As recognized by the trial court, there is a dearth of current appellate authority in this State directly addressing the legal

question presented by this dispute, whether a relatively brief attempt at a reconciliation, after otherwise valid claims of abandonment have matured and been alleged in an action, should require plaintiff to forfeit these otherwise facially valid causes of action for divorce. Contrary to the reading of the case law propounded by defendant, we find that none of the matters cited directly support his proposition that a finding of abandonment cannot be sustained if the parties have attempted a reconciliation that involved their engaging in sexual relations on at least one occasion. It must be borne in mind that the causes of action at issue here alleged abandonment and constructive abandonment, and thus cases addressing condonation in actions alleging adultery or cruel and inhuman treatment are not dispositive.

In our view, common sense teaches that it is consistent with the public policy of this State that couples enduring marital disharmony should be encouraged to attempt reconciliation, particularly when, as here, the marriage is one of long duration. That the courts should, when practicable, encourage the preservation of families, in all their permutations, is so painfully obvious, that the lack of appellate authority so declaring can only be explained by the failure heretofore of anyone to contest such a basic proposition.

The extant case law does not point to a contrary result. In a matter characterized by defendant as controlling authority, *Hage v Hage* (112 AD2d 659), the plaintiff sought a divorce on the ground of abandonment, and the defendant counterclaimed for divorce based on cruel and inhuman treatment. The trial court granted the plaintiff a divorce and dismissed the counterclaim. On appeal, the Third Department concluded that the evidence of abandonment was insufficient. The Court explained, "To grant a divorce on the ground of abandonment requires that one spouse not fulfill the basic obligations of the marriage relationship for a period of one year or more and that said conduct be unjustified and without the consent of the abandoned spouse (Domestic Relations Law § 170 [2]; *Schine v Schine*, 31 NY2d 113, 119). The evidence must show a 'hardening of resolve' by one spouse not to live with the other (*Phillips v Phillips*, 70 AD2d 30, 37-38). In this case, we cannot identify sufficient facts which establish this hardening of resolve. For example, defendant continued to visit the marital residence after October 1980, the final visit being in February 1982. During this visit, it was plaintiff who ordered defendant to leave the house and not return except on terms delineated by

plaintiff. It is therefore difficult to conclude that defendant abandoned plaintiff when defendant continued to visit the house and plaintiff ordered her to leave *(see, Lovell v Lovell*, 75 AD2d 913, 914)." *(Hage v Hage, supra*, at 661-662.)

We find *Hage* factually and procedurally distinguishable from the case at bar. In *Hage* the parties were accorded a trial, and the issue of whether the wife had abandoned the husband was fully explored and developed through evidence. Additionally, in *Hage* there was a pattern of attempted reconciliations over a period of 17 months, something quite different from one relatively brief and unsuccessful effort by an estranged couple to reconcile, after the divorce action had been filed. Here, the trial court dismissed the plaintiff's causes of action asserting abandonment and constructive abandonment as a matter of law, without affording her an opportunity to establish her version of the marriage's disintegration. In so doing, the court impliedly resolved disputed questions of fact, without taking testimony, including, whether defendant left the house and whether he did so without justification. Thus, *Hage* and the case at bar are hardly comparable.

Defendant's reliance on *Lind v Lind* (89 AD2d 518, *affd* 58 NY2d 965) is likewise misplaced. In *Lind* the plaintiff alleged cruel and inhuman treatment, constructive and actual abandonment, and, following a trial, the court granted a separation to plaintiff on the ground of cruel and inhuman treatment. On appeal, this Court held that "[t]he breakdown of relations between these parties appears to have stemmed from an extramarital relationship plaintiff began to have in 1977 with one of his patients. The seemingly trivial allegations of physical abuse, evidenced by such isolated events as pouring a can of soda over his head and striking him on the head with an envelope do not rise to the dignity of a cause of action for separation or divorce grounded on cruel and inhuman treatment" *(supra,* at 519). However, the description of the facts of that case contains no indication of an attempt at a reconciliation after the action was commenced and is therefore uninformative as to what result should obtain in this case.

We note that in *Palin v Palin* (213 AD2d 707, 708), the Court observed that "the plaintiff *continued to cohabit with the defendant for more than a year after she commenced this action for divorce"* (emphasis added). In *Palin* the question of abandonment was never addressed on appeal. Moreover, we do not perceive how an estranged couple's continuing to share the same premises for more than a year after the commencement of an action is comparable to the facts at bar.

Similarly, in *Phillips v Phillips (supra)*, wherein the husband interposed an affirmative defense of abandonment, the Court determined that the husband should not have been accorded a divorce on that ground and noted that the supposed abandonment had only existed for a period of four months at the time that the defendant had served his answer. Thus, in *Phillips* the plaintiff had failed to satisfy the durational prerequisite to a claim of abandonment. Moreover, in *Phillips* the plaintiff had initiated her divorce action about three months after she left her husband, and, therefore, her departure, which was prompted by a belief that the defendant had behaved badly toward her, could not form the basis of an abandonment. The facts of *Phillips* are simply too different from those at bar for that case to be instructive beyond its core holding that in order to find abandonment there must be a "hardening of resolve" by one spouse not to live with the other (*Phillips v Phillips, supra*, at 37).

Although not exactly on all fours with this case, we find that the authorities relied on by plaintiff, in that they discuss the effect of reconciliation attempts on causes of action other than abandonment, are at least supportive of her position (*see, i.e., Matter of Wilson*, 50 NY2d 59; *Ostriker v Ostriker*, 203 AD2d 343; *Markowitz v Markowitz*, 52 AD2d 521; *Seaman v Seaman*, 37 AD2d 551; *Lowe v Lowe*, 37 AD2d 525, *affg* 67 Misc 2d 271; *Fusaro v Fusaro*, 18 AD2d 714, *affg* 236 NYS2d 525; *Fisher v Fisher*, 223 App Div 19, *affd* 250 NY 313). Moreover, we agree with plaintiff that there is more than an implication in several of the cases that an effort to reconcile is meaningless without a showing that it was made in good faith (*see, Markowitz v Markowitz, supra*; *Seaman v Seaman, supra*).

The Court in *Markowitz* held, albeit in the context of a separation agreement, that the continued cohabitation by parties to a separation agreement was not enough to warrant abrogation of that agreement. The Court commented that "[m]ere cohabitation alone does not by itself destroy the validity of the separation agreement but must have as an added ingredient an intent to reconcile * * * which intent is, of course, a question of fact to be proven by the acts and expressions of the parties." (52 AD2d, *supra*, at 521.) Furthermore, in *Seaman v Seaman (supra*, at 552), this Court, under circumstances different than those presented here, rejected the wife's assertion that she had tried to reconcile with her husband, explaining that "there was no basis for any finding of a good faith attempt at reconciliation by the wife". In the case at bar, by granting

the motion for summary judgment just prior to opening statements, the trial court prevented plaintiff from endeavoring to prove that defendant did not make a good-faith effort to reconcile. The court held plaintiff's abandonment claims were forfeited as a matter of law by the fact she engaged in sexual relations with her husband during the failed reconciliation attempt. However, we view the extant record as ambiguous as to the frequency of those relations and whether they were entered into in good faith by the defendant husband. The prevailing legal authority, even if sparse, seems to hold that cohabitation by itself is insufficient to invalidate a separation agreement or an accrued claim for divorce (*see, Matter of Wilson, supra;*[2] *Markowitz v Markowitz, supra*; *Seaman v Seaman, supra*).

We note, too, a case of less recent vintage that held that a brief, unsuccessful attempt to reconcile following the initiation of a marital proceeding is not fatal to a party's causes of action (*Fusaro v Fusaro*, 236 NYS2d 525 [1962], *affd* 18 AD2d 714, *supra*). In *Fusaro v Fusaro* (*supra*), the wife had instituted an action for separation, alleging abandonment, cruelty and nonsupport. When the case came before the court for trial, the court endeavored, fruitlessly, to bring about a reconciliation. The husband then attempted to set aside the judgment of separation, urging that there had been cohabitation and reconciliation during the pendency of the action. Yet, the court, in a decision upheld on appeal, determined that "[p]laintiff's admission that for five weeks after the abandonment she had intercourse with the defendant in the hopes of effecting a reconciliation is not sufficient proof of a reconciliation itself", and "[v]oluntary cohabitation is not in and of itself a statutory reason for denial of a judgment of separation". (236 NYS2d, *supra*, at 527, 528.) Furthermore, in the context of a cruel and inhuman treatment cause of action, it has been held that a short period of cohabitation does not amount to condonation of the cruel and inhuman treatment asserted as the basis of a divorce (*Lowe v Lowe*, 67 Misc 2d 271, *affd* 37 AD2d 525, *supra*).

As long ago as 1928 this Court declared, and the Court of Appeals agreed, in the context of a cause of action for cruel and inhuman treatment, that "[w]e are not in accord with the defendant's argument that cohabitation after acts of cruelty may be considered as condonation in the sense in which it would be after an act of adultery. We rule that endurance of

2. This matter also concerned a separation agreement between a couple that thereafter continued to live together.

unkind treatment in an effort to overcome its practice and continuance of cohabitation does not condone a course of inhuman conduct" (*Fisher v Fisher, supra,* at 22). Today, we hold that an estranged couple's attempt at a reconciliation, even where it involves the brief and isolated resumption of cohabitation and/or sexual relations, after a matrimonial action has already been commenced, does not, as a matter of law, preclude an entry of judgment in favor of the spouse who originally had an otherwise valid claim for abandonment. Rather, the trial court should examine the totality of the circumstances surrounding the purported reconciliation, before determining its effect, if any, upon the pending marital proceeding. Among the many factors for the trial court to consider are whether the reconciliation and any cohabitation were entered into in good faith, whether it was at all successful, who initiated it and with what motivation. Although concededly more difficult to apply than a rule which automatically results in the forfeiture of abandonment claims upon the parties making even the most hollow attempt at reconciliation, we conclude that the approach we adopt is not only consonant with human experience and common sense, but with the public policy and law of our State as well.

Accordingly, the order of the Supreme Court, New York County (Lewis Friedman, J.), entered on or about July 5, 1995, which granted the motion by defendant for partial summary judgment dismissing the plaintiff's abandonment claims, should be reversed, on the law, without costs, the second and third causes of action of the complaint reinstated, and the matter remanded for trial.

WALLACH, J. P., ROSS, NARDELLI and WILLIAMS, JJ., concur.

Order, Supreme Court, New York County, entered on or about July 5, 1995, reversed, on the law, the second and third causes of action of the complaint reinstated, and the matter remanded for trial, without costs and disbursements.